**[J-67-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| POCONO MOUNTAIN SCHOOL DISTRICT, | : | No. 87 MAP 2015 |
| | : | |
| | : | Appeal from the Order of the |
| Appellant | : | Commonwealth Court dated July 8, |
| | : | 2015, at No. 2052 CD 2014 Affirming |
| | : | the Order of the Pennsylvania |
| v. | : | Department of Education dated October |
| | : | 23, 2014 at No. EDU-2014-SLAP- |
| | : | 000176. |
| PENNSYLVANIA DEPARTMENT OF | : | |
| EDUCATION, DIVISION OF SUBSIDY | : | ARGUED: May 11, 2016 |
| DATA AND ADMINISTRATION, | : | |
| | : | |
| Appellee | : | |

**OPINION ANNOUNCING THE JUDGMENT OF THE COURT**

**JUSTICE DONOHUE**                                  **DECIDED: December 28, 2016**

In this discretionary appeal, we are asked to determine whether, pursuant to section 8327(b)(2) of the Public School Employees' Retirement Code, 24 Pa.C.S.A. § 8327(b)(2), the school district that originally approved the creation of a charter school is financially responsible, after the revocation of the charter, for the charter school's prior failure to make payments to its employees' retirement fund. This question hinges upon whether unpaid retirement contributions constitute an outstanding obligation of a closed charter school. We conclude that the deficiency resulting from the failure to make the payments is an outstanding financial obligation of a closed charter school and therefore, pursuant to section 17-1729-A(i) of the Charter School Law, 24 P.S. § 17-1729-A(i), the school district cannot be held liable for the amounts owed.

A charter school is "an independent public school established and operated under a charter" that is authorized by the school board of the school district in which the charter school is located. 24 P.S. § 17-1703-A. Charter schools are governed by the Charter School Law, 24 P.S. §§ 17-1701-A – 17-1751-A, which the General Assembly added in 1997 to the Public School Code of 1949. *See* S.B. 123, Act 1997-22, Reg. Sess. (Pa. 1997).

Like the employees of a traditional public school, all charter school employees must be enrolled as members in the Public School Employees' Retirement System ("PSERS") unless they are enrolled in another retirement program. 24 P.S. § 17-1724-A(c); *see also* 24 Pa.C.S.A. § 8301(a). PSERS is a defined benefit pension plan that is funded by three sources: (1) member contributions; (2) employer contributions; and (3) investment returns. The Commonwealth and the school district are each responsible for paying a portion of the employer contribution. *See* 24 Pa.C.S.A. § 8328(a) (explaining the employer contribution rate). The Commonwealth pays the school district directly an amount equal to at least fifty percent of the employer contribution.[1] 24 Pa.C.S.A. § 8535(2)-(3). The Commonwealth provides this payment to the school district on a quarterly basis. 24 Pa.C.S.A. § 8535(3). The school district generally then has five days from the receipt of the money from the Commonwealth to make the full payment due to PSERS. Id. The school district must send PSERS 100 percent of the employer contribution and the member contributions, the latter of which are collected by the

---

[1] The reimbursement provided by the Commonwealth to school districts may be greater than fifty percent for those employees who were hired after June 30, 1994. *See* 24 Pa.C.S.A. § 8535(1).

school district and submitted on its employees' behalf. 24 Pa.C.S.A. §§ 8327(a), 8506(c), 8535(3).

A charter school receives its funding, on a monthly basis, from the school districts that encompass the residence of each child that attends the charter school. 24 P.S. § 17-1725-A(a)(2), (3), (5). The amount required for the charter school's employer contribution to PSERS is included in the monthly payments sent to the charter school by the school districts. *See* 24 P.S. § 17-1725-A(a)(2), (3). A charter school, however, remits its own payments to PSERS, as it is considered to be a "school district" for this purpose.[2] 24 P.S. § 17-1724-A(c). If a charter school fails to make the requisite PSERS payments, section 8327(b)(2) sets forth a mechanism "to facilitate the payments of amounts due" to PSERS, instructing that

> the Secretary of Education and the State Treasurer shall cause to be deducted and paid into the fund from any funds appropriated to the Department of Education for basic education of the chartering school district of a charter school and public school employees' retirement contributions amounts equal to the employer and pickup contributions which a charter school is required to pay to the fund, as certified by the [PSERS] board, and as remains unpaid on the date such appropriations would otherwise be paid to the chartering school district or charter school.

24 Pa.C.S.A. § 8327(b)(2). Thus, pursuant to section 8327(b)(2), upon receiving notification from PSERS that a charter school failed to make the required PSERS

---

[2] Prior to the 2014-2015 fiscal year, a charter school received 100 percent of its employer contribution from school districts that had students attending the charter school plus fifty percent of its employer contribution from the Commonwealth -- something commonly referred to as the "charter school double dip." *Charter School Subsidies*, PSERS Employer Bulletin, Vol. 5, at 1, 4 (2014). In the 2014-2015 Budget Implementation, the General Assembly eliminated the "double dip" by precluding payments from the Commonwealth to charter schools for PSERS contributions. 72 P.S. § 1722-J(9).

payments, the Department of Education (the "DOE") withholds money from the chartering school district's basic education subsidy to cover the charter school's PSERS deficiency (for the employer and/or member contributions). *See* id. Any deduction from the chartering school district's basic education subsidy used to cover the charter school's failure to make PSERS payments, however, "shall be deducted from the amount due to the charter school" from the chartering school district. Id.

Section 1714-A of the Charter School Law sets forth a non-exhaustive list of a charter school's powers.[3] *See* 24 P.S. § 17-1714-A(a), (b). Neither the Commonwealth nor any school district is responsible for debts incurred by a charter school in its exercise of any of the specified powers. 24 P.S. § 17-1714-A(c). The chartering school district is, however, responsible for annually assessing the charter school's performance

---

[3] The powers enumerated in section 1714 are those that are "necessary or desirable for carrying out [the school's] charter," including the power to:

> (1) Adopt a name and corporate seal; however, any name selected shall include the words "charter school."
> (2) Sue and be sued, but only to the same extent and upon the same condition that political subdivisions and local agencies can be sued.
> (3) Acquire real property from public or private sources by purchase, lease, lease with an option to purchase or gift for use as a charter school facility.
> (4) Receive and disburse funds for charter school purposes only.
> (5) Make contracts and leases for the procurement of services, equipment and supplies.
> (6) Incur temporary debts in anticipation of the receipt of funds.
> (6.1) Incur debt for the construction of school facilities.
> (7) Solicit and accept any gifts or grants for charter school purposes.

24 P.S. § 17-1714-A(a).

to ensure it is "meeting the goals of its charter[.]" 24 P.S. § 17-1728-A(a). To facilitate this assessment, the charter school is required to submit an annual report to the school board of the chartering district, and the school board is further provided "ongoing access to the records and facilities of the charter school to ensure that the charter school is in compliance with its charter and this act and that requirements for testing, civil rights and student health and safety are being met." 24 P.S. § 17-1728-A(a), (b). A comprehensive review is conducted prior to the school board granting a five-year renewal of the charter. 24 P.S. § 17-1728-A(c).

A charter may be revoked or not renewed for a variety of reasons. *See* 24 P.S. § 17-1729-A(a). The revocation, termination or non-renewal of the charter results in the dissolution of the charter school. 24 P.S. § 17-1729-A(i). Following dissolution, the charter school's liabilities and obligations are settled, and any assets that remain are divided and given proportionally to the school entities[4] that had students enrolled in the charter school in the year immediately preceding its closure. Id. Under no circumstances, however, do its "outstanding liabilities and obligations," fall upon either a school district or the Commonwealth. Id. ("**In no event** shall such school entities or the Commonwealth be liable for any outstanding liabilities or obligations of the charter school.") (emphasis added).

Against this legislative backdrop, we turn to the uncontested facts of this case. In 2003, Pocono Mountain School District (the "School District") granted a three-year charter for the creation of Pocono Mountain Charter School (the "Charter School"). In

---

[4] A "school entity" is defined by statute as "[a] school district of any class, intermediate unit or an area vocational-technical school, as provided for under … the Public School Code of 1949." 24 Pa.C.S.A. § 8102.

2006, the School District renewed the charter for an additional five years. In 2008, the School District initiated revocation proceedings, delineating twenty-seven reasons for revoking the charter. The school board held a number of public hearings over the course of two years, primarily focused on concerns of financial improprieties by the Charter School's Chief Executive Officer, Dennis Bloom, and "religious entanglement" between the Charter School and the Shawnee Tabernacle Church, of which Bloom was the founder and senior pastor. Pocono Mountain Charter Sch., Inc. v. Pocono Mountain Sch. Dist., 88 A.3d 275, 279 (Pa. Commw. 2014).[5] Following a series of appeals, the Charter School Appeal Board ultimately affirmed the School District's decision to revoke the Charter School's charter, effective June 21, 2014.

On August 28, 2014, the DOE deducted $87,700.32 from the School District's basic education subsidy for the 2014-2015 school year. The DOE made this deduction, without prior notice to the School District, because of the Charter School's failure to make the mandatory payments to PSERS during the 2013-2014 school year.

The School District appealed this deduction to the head of the DOE. *See* 1 Pa. Code § 35.20. The agency head found that the School District was not entitled to a hearing on this matter, as the deduction was a mandatory, ministerial act conducted pursuant to section 8327(b)(2).

The School District disputed that it was the Charter School's chartering school district on the date the DOE made the deduction from its basic education subsidy (August 28, 2014) because, as of that date, the Charter School was no longer in

---

[5] A more detailed recitation of the bases for revocation and the procedural history of that segment of the case appear in the 2014 Commonwealth Court decision. *See* Pocono Mountain Charter Sch., Inc., 88 A.3d at 280-82.

existence.  The agency head found, however, that the relevant time was not when the DOE made the deduction, but when the deficiency arose, and there was no question that the School District was the chartering school district at the time the Charter School failed to make the contribution to PSERS.  As it was uncontested that the Charter School was required to make payments to PSERS for the 2013-2014 school year, *see* 24 P.S. § 17-1724-A(c), the agency head concluded that the DOE did not exercise any discretion in making the deduction.  As such, the School District was not entitled to a hearing on the propriety of the deduction, and the agency head granted the DOE's motion to dismiss the School District's appeal.  Agency Head Opinion and Order, 10/23/2014, at 2-3 (citing Fricchione v. Dep't of Educ., 287 A.2d 442, 443 (Pa. Commw. 1972), for the proposition that "an exercise of discretion would appear to be the starting point in determining whether an agency's adjudication is an adjudication"); *see also* 2 Pa.C.S.A. § 504 (requiring "reasonable notice of a hearing and an opportunity to be heard" only for an "**adjudication** of a Commonwealth agency") (emphasis added).

The School District filed a petition for review, and a three-judge panel of the Commonwealth Court affirmed in an unpublished opinion.[6]  The court recognized that the action by the DOE is only ministerial, and thus nonadjudicative, "as long as it is undisputed that a school district is the proper entity from which funds are to be deducted and that amount is not in dispute."  Pocono Mountain Sch. Dist. v. Pa. Dep't of Educ., 2052 C.D. 2014, 2015 WL 5457139, at *2 (Pa. Commw. July 8, 2015) (unpublished memorandum) (citing Council of Phila. v. Street, 856 A.2d 893, 896 (Pa. Commw. 2004)

---

[6]  Then-President Judge Dan Pellegrini authored the majority decision, which Judge Bernard L. McGinley joined.  Judge P. Kevin Brobson concurred only in the result.

(defining a ministerial act as "one which a public officer is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed") and Flinn v. Pittenger, 338 A.2d 735, 757 (Pa. Commw. 1975) (stating that a ministerial act is "nonadjudicative and not subject to judicial review")).

Like the agency head, the Commonwealth Court found that because it was undisputed that the School District was the chartering school district during the 2013-2014 school year (when the Charter School failed to satisfy its obligation to make retirement contributions to PSERS), section 8327(b)(2) mandated that the DOE deduct the amount of the deficiency from the School District's basic education subsidy. Id. at *3. Notably, the Commonwealth Court stated that the timing of the deduction was of no moment because "[n]owhere in the language of [s]ection 8327(b)(2) does it explicitly or implicitly indicate that a chartering school district is cleared from having to pay a deficient payment if the charter school ceases to operate as one." Id. The Commonwealth Court therefore concluded as a matter of law that "[a]lthough the deduction was taken after the Charter School's charter was revoked, the School District was the chartering school district during the period in which the deficiency arose and, thus, it is on the hook for the amount of the deficiency." Id.

We granted allowance of appeal to determine whether the Commonwealth Court's decision makes the School District responsible for the Charter School's liabilities, in violation of the Charter School Law. See Pocono Mountain Sch. Dist. v. Pa. Dep't of Educ., Div. of Subsidy Data & Admin., 127 A.3d 1289 (Pa. 2015) (per curiam).

This question requires that we interpret several statutory provisions. Therefore, our standard of review in this matter is de novo and our scope of review is plenary. Cent. Westmoreland Career & Tech. Ctr. Educ. Ass'n, PSEA/NEA v. Penn-Trafford Sch. Dist., 131 A.3d 971, 976 (Pa. 2016).

The crux of the School District's argument (and that of its amicus, the Pennsylvania School Boards Association ("PSBA")) is that section 8327(b)(2) cannot be interpreted to permit the deduction of money from its basic education subsidy to cover the Charter School's PSERS delinquency for the 2013-2014 school year because the Charter School was closed at the time the DOE made the deduction. According to the School District, the Commonwealth Court ignored the plain language of section 8327(b)(2), which states its purpose as allowing for the "exchange of credits" between the employer and the Commonwealth, and the last sentence of the statute, which is a "mandatory pass through provision" that can only be effectuated if the charter school is still in operation at the time the DOE deducts the charter school's unpaid PSERS contributions from a school district's funding. School District's Brief at 12-13; 24 Pa.C.S.A. § 8327(b)(2); see also PSBA's Brief at 5, 11-12 (referring to section 8327(b)(2) as "a subsidy intercept" that is permitted "only if and to the extent that there are amounts due to be paid from the chartering school district to the charter schools against which the intercepted subsidy amounts can be offset") (emphasis omitted).

The School District further contends that withholding payments from its basic education subsidy to fund a closed charter school's delinquent PSERS payments is proscribed by several provisions of the Charter School Law, which clearly and unambiguously indicate that a school district is not financially responsible for a charter

school's debts, liabilities and obligations. School District's Brief at 10-12 (citing 24 P.S. §§ 17-1714-A(c), 17-1724-A(c), 17-1729-A(i)); *see also* PSBA's Brief at 7-8. The School District asserts that section 8327(b)(2) and the cited sections of the Charter School Law are in pari materia and must be read as one statute, because together, they all "address the operations of charter schools." School District's Brief at 14. In the alternative, the School District states that sections 1714-A(c) and 1729-A(i) of the Charter School Law, which expressly preclude a school district from being responsible for a charter school's debts and liabilities, are more specific and were enacted after section 8327(b)(2),[7] and are therefore controlling. Id. at 15-16 (citing 1 Pa.C.S.A. § 1933); School District's Reply Brief at 6-7; *see also* PSBA's Brief at 11. Thus, the School District and its amicus maintain that section 8327(b)(2) only permits the DOE to withhold money from a school district to cover a charter school's PSERS delinquencies in amounts that can be recouped by the school district through its own withholding of payments from the charter school. School District's Brief at 18; PSBA's Brief at 11-12.

The DOE, on the other hand, contends that the Commonwealth Court's decision is fully supported by applicable law and the rules of statutory construction.[8] The DOE

---

[7] Section 1714-A(c) and the pertinent language of section 1729-A(i) were added to the Charter School Law by the General Assembly in July 2004. H.B. 564, Act 2004-70, Reg. Sess. (Pa. 2004). Subsection (b)(2) was added to section 8327 of the Public School Employees' Retirement Code in 2001. H.B. 26, Act 2001-9, Reg. Sess. (Pa. 2001).

[8] In its brief before this Court, the DOE also asserts that its deduction of funds from the School District pursuant to section 8327(b)(2) was ministerial, and the School District thus was not entitled to pre-deprivation notice and an opportunity to be heard pursuant to 2 Pa.C.S.A. § 504. DOE's Brief at 9-11. The School District refutes this contention in its reply brief. School District's Reply Brief at 3-5. We do not address this argument, as it is beyond the scope of our allocatur grant.

and its amicus, the PSERS Board, argue that the provisions cited to by the School District and the PSBA are inapplicable and irrelevant, as section 8327(b)(2) sets forth a payment mechanism for PSERS, not a means for recovering a debt or liability. DOE's Brief at 17-18, 20-21, 23, 26, 27; PSERS Board's Brief at 9-15. According to the DOE, section 1714-A(c) only precludes school districts or the Commonwealth from being responsible for a charter school's debt incurred as a result of a charter school exercising the powers enumerated in that section. DOE's Brief at 19; *see* supra, note 3. As contributing to PSERS is not a power specified in section 1714-A, the DOE asserts that section 1714-A(c) has no bearing on this case. DOE's Brief at 19-20; PSERS Board's Brief at 12-13.

Section 1729-A(i), the DOE argues, applies only to "the contractual liabilities that may exist at the time of closure," and is likewise inapposite to the circumstances in question.[9] DOE's Brief at 21. Alternatively, the DOE states that while 1729-A(i)

---

[9] The PSERS Board argues that section 1729-A(i) is inapplicable because under section 8327(b)(2), it is the Commonwealth's money, not the school district's money, that is used to cover a charter school's failure to make the required PSERS contributions, and therefore, a school district is not being held responsible for the charter school's outstanding liabilities or obligations. PSERS Board's Brief at 16-18. Justice Dougherty, in his Dissenting Opinion, adopts a variation of this argument, contending that section 8327(b)(2) is "intended to facilitate the Commonwealth's obligation as guarantor [of PSERS contributions]," requiring only the transfer of "Commonwealth monies" to PSERS to cover a charter school's missed payments. Dissenting Op. (Dougherty, J.) at 2-3. Although it is true that the money withheld from a school district to pay PSERS for a charter school's delinquency comes directly from the Commonwealth, it is money that the school district is otherwise entitled to receive as part of its funding from the Commonwealth. The amounts used to pay PSERS for the charter school's delinquency is deducted from the chartering school district's funding. *See* Letter Filing Petition for Appeal, 9/2/2014 (Attachment). Put another way, while PSERS is paid by the Commonwealth for a charter school's delinquencies, the payment is made with money that would otherwise be allocated to the school district for its general use. As such, these arguments pervert the reality of the funding mechanism.

generally prohibits a school district from being responsible for a closed charter school's liabilities and obligations, section 8327(b)(2) sets forth a specific exception, making a school district financially responsible if a charter school, now closed, has failed to make its PSERS contributions. Id. at 22, 27-29.

According to the DOE, because sections 1714-A(c) and 1729-A(i) also absolve the Commonwealth from being responsible for a charter school's debts and liabilities, the School District's interpretation of section 8327(b)(2) would lead to the invalidation of another provision of the Retirement Code, section 8531. As a result, the DOE continues, "the Commonwealth would no longer be the guarantor for the unfunded benefits of a closed charter school's employees[,] resulting in the rescission of the credited service earned." Id. at 23-24; *see* 24 Pa.C.S.A. § 8531. In other words, the DOE contends that employees of the charter school will not be credited for retirement benefits for the period of the charter school's default.

The DOE states that its interpretation of the statutory provisions in question effectuates the intent of the General Assembly in enacting section 8327(b)(2), which was to protect the charter school's employees by providing PSERS with a way to ensure that the employees will not lose credited service. DOE's Brief at 25. The DOE argues that the provisions of the Charter School Law relied upon by the School District and its amicus should not be interpreted as invalidating or nullifying that objective or the operability of the statute. Id. at 25, 28-30.

Further, the DOE disputes that section 8327(b)(2) **requires** that a school district be able to recover from the charter school the amount deducted for the charter school's PSERS delinquency. The recoupment provision is not stated as a prerequisite to the

DOE's obligation to withdraw the funds from the school district's basic education subsidy. Id. at 31-32 & n.11. Additionally, in some circumstances, students from several school districts attend a single charter school. The DOE points out that every school district that has students attending the charter school must provide funding to the charter school (which, inter alia, includes money for the charter school's employer contribution to PSERS). Nonetheless, section 8327(b)(2) requires only the **chartering** school district to cover the charter school's delinquent PSERS contributions and, depending on the number of the chartering school district's students attending the charter school, this amount may not be recoverable by withholding the monthly payments that it must make to the charter school. Thus, according to the DOE, the contention of the School District and PSBA that section 8327(b)(2) operates solely as a "pass through" is unsupportable. Id. at 32-34. The DOE asserts that its interpretation of section 8327(b)(2) is just, as the School District is in the best position to oversee the financial dealings of the Charter School and is able to ensure payments to PSERS are timely made. Id. at 18 n.3, 25.

We begin by addressing the last contention raised by the DOE regarding the School District's supervisory role, which position Justice Dougherty adopts in his Dissent. *See* Dissenting Op. (Dougherty, J.) at 4-5. In Justice Dougherty's view, the School District "failed in its supervisory duties" by not ensuring that the Charter School made its PSERS payments during the 2013-2014 academic year. Id. at 5. Generally speaking, a chartering school district is able to access the charter school's records "to ensure that the charter school is in compliance with its charter and this act." 24 P.S.

§ 17-1728-A(a). In this case, the School District fulfilled this obligation and reacted to its findings, as evidenced by its petition to revoke the Charter School's charter in 2008.

Moreover, the Monroe County Court of Common Pleas appointed a custodian (assisted by a forensic auditor and educational professionals) to oversee the Charter School's operations in April 2013. Pocono Mountain Charter Sch., Inc., 88 A.3d at 279; Pocono Mountain Charter Sch., Inc. v. Pocono Mountain Sch. Dist., 2013 Pa. Commw. Unpub. LEXIS 775, at 7 (Pa. Commw. Aug. 13, 2013); *see also* Bansa v. Boxley, 9280 CV 2012 (C.P. Monroe, Apr. 19, 2013). This occurred in the midst of the School District's ongoing attempt to revoke the Charter School's charter. The custodian was given authority over the Charter School's finances, which he was, in part, appointed to stabilize. He was required to report to the court on his progress monthly. Pocono Mountain Charter Sch., Inc., 88 A.3d at 279; Pocono Mountain Charter Sch., Inc. 2013 Pa. Commw. Unpub. LEXIS 775, at 7. In the memorandum decision granting the Charter School's request for a stay pending the outcome of its appeal of the CAB's revocation of its charter, Judge Robert Simpson relied, inter alia, upon the appointment of the custodian, finding that this "mitigates the alleged threat to public interest in permitting the Charter School to operate in the 2013-2014 academic year because the court [of common pleas] ensures the current public funds are spent appropriately." Pocono Mountain Charter Sch., Inc. 2013 Pa. Commw. Unpub. LEXIS 775, at 7-8. Nonetheless, it was while the Charter School was under the custodian's supervision and control, monitored by the Monroe County Court of Common Pleas, that the Charter School failed to make its PSERS payments. We therefore respectfully disagree with the

DOE and Justice Dougherty that the failure to discover the Charter School's PSERS delinquencies was the result of any lack of diligence by the School District.

Justice Dougherty seemingly imposes an additional duty upon a chartering school district that was never contemplated under the law. He fails to explain what the School District could have done if it had known that the Charter School failed to make its PSERS payments. Our research reveals no provision, in the Charter School Law or otherwise, that permits a chartering school district to prospectively withhold payments to a charter school based upon its own investigation of a charter school's financial improprieties. The School District's relief from the consequences of a financially irresponsible Charter School is to seek revocation of the charter. *See* 24 P.S. § 17-1729-A(a)(3) (permitting a chartering school district to revoke or refuse to renew a charter based upon fiscal mismanagement by the charter school). This was the remedy sought by the School District in 2008. Justice Dougherty seems to suggest that the School District could have avoided the lengthy legal proceedings involved with revoking the charter because the School District simply could have withheld payments from the Charter School. The Charter School Law does not allow a school district to starve a charter school out of existence.

Instead, decision in this case rests upon our interpretation of the interplay between two statutes -- section 8327(b)(2) of the Public School Employees' Retirement Code and section 1729-A(i) of the Charter School Law.[10] When interpreting a statute,

---

[10] As previously stated, the School District also relies upon 1714-A(c) in support of its position that it cannot be responsible to cover the Charter School's PSERS delinquency. We agree with the DOE, however, that this provision has no applicability to the circumstances before us. Section 1714-A(c) states: "Any indebtedness incurred by a (continued…)

the object is to "ascertain and effectuate" the intent of the legislature. 1 Pa.C.S.A. § 1921(a). When possible, we must give effect to every provision of a statute, as "the legislature 'is presumed not to intend any statutory language to exist as mere surplusage.'" Id.; Commonwealth v. Chester, 101 A.3d 56, 63 (Pa. 2014) (quoting Commonwealth v. Ostrosky, 909 A.2d 1224, 1232 (Pa. 2006)). If the language of a statute is clear and unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). "Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S.A. § 1903(a).

Statutes or parts of statutes that are in pari materia, meaning "they relate to the same person or things or to the same class of persons or things," are to be construed together, if possible, as one statute. 1 Pa.C.S.A. § 1932. Conflicting provisions must be construed, if possible, to give effect to both provisions. 1 Pa.C.S.A. § 1933. If the conflict is irreconcilable, we construe the more specific or "special" provision "as an exception to the general provision," unless the legislature enacted the general provision later and it was "the manifest intention of the General Assembly that such general provision shall prevail." Id.

_____

(…continued)
charter school **in the exercise of the powers specified in this section** shall not impose any liability or legal obligation upon a school entity or upon the Commonwealth." 24 P.S. § 17-1714-A(c) (emphasis added). While subsection (a) is not an all-inclusive list of the powers a charter school has, these are "the powers specified" in section 1714-A. *See* supra, note 3. As payment to PSERS is not a "specified" power under this section (rather, as stated herein, that requirement is stated in section 17-1724(c)), section 17-1714-A(c) does not preclude the actions taken by the DOE here.

We are unpersuaded by the DOE's argument that money owed to PSERS by a charter school is not a liability or obligation. As the DOE's amicus recognizes, Black's Law Dictionary defines the word "liability," in relevant part, as "[a] financial or pecuniary obligation in a specified amount; debt." Black's Law Dictionary (10th ed. 2014); PSERS Board's Brief at 15. "Obligation" is defined, in relevant part, as "[a] legal … duty to do … something." Black's Law Dictionary (10th ed. 2014). The Charter School Law clearly and unambiguously mandates that a charter school remit payments to PSERS for its employees. 24 P.S. § 17-1724-A(c) ("The charter school shall be considered a school district and **shall make payments by employers to the Public School Employees' Retirement System**[.]") (emphasis added). When a charter school fails to comply with its legal duty to make PSERS payments, section 8327(b)(2) operates to allow PSERS to recover the amount owed. Thus, a charter school's PSERS payments are unquestionably its financial obligation.

To reiterate, section 8327(b)(2) provides:

> To facilitate the payments of amounts due from any charter school, as defined in … the Public School Code of 1949, to the fund through the State Treasurer and to permit the exchange of credits between the State Treasurer and any employer, the Secretary of Education and the State Treasurer shall cause to be deducted and paid into the fund from any funds appropriated to the Department of Education for basic education of the chartering school district of a charter school and public school employees' retirement contributions amounts equal to the employer and pickup contributions which a charter school is required to pay to the fund, as certified by the board, and as remains unpaid on the date such appropriations would otherwise be paid to the chartering school district or charter school. Such amounts shall be credited to the appropriate accounts in the fund. Any reduction in payments to a chartering school district made pursuant to this section shall be deducted from the amount

due to the charter school district pursuant to the Public School Code of 1949.

24 Pa.C.S.A. § 8327(b)(2) (footnote omitted). Section 1729-A(i) states:

> When a charter is revoked, not renewed, forfeited, surrendered or otherwise ceases to operate, the charter school shall be dissolved. After the disposition of any liabilities and obligations of the charter school, any remaining assets of the charter school, both real and personal, shall be distributed on a proportional basis to the school entities with students enrolled in the charter school for the last full or partial school year of the charter school. **In no event shall such school entities or the Commonwealth be liable for any outstanding liabilities or obligations of the charter school.**

24 P.S. § 17-1729-A(i) (emphasis added).

Sections 8327(b)(2) and the relevant portion of section 1729-A(i) both address the same subject -- unpaid obligations of charter schools[11] -- and therefore are in pari materia. 1 Pa.C.S.A. § 1932(a); *see also* Phila. Fire Officers Ass'n v. Pa. Labor Relations Bd., 369 A.2d 259, 261 (Pa. 1977) (finding two statutes that both address collective bargaining to be in pari materia). Section 8327(b)(2) facilitates the payment of a charter school's outstanding obligations to PSERS by withholding those amounts from the funding due to the chartering school district. Section 1729-A(i) precludes, under any circumstance, making a school district responsible for a closed charter school's outstanding obligations. Reading these two statutes as one, and giving effect to every

---

[11] There is no support for the DOE's contention that the language in subsection 1729-A(i) prohibiting a school district from being held responsible for a charter school's obligations and liabilities following its closure is limited to the charter school's "contractual liabilities that may exist at the time of closure." DOE's Brief at 21. Section 1729 concerns the nonrenewal or termination of a charter, with subsection (i) addressing the closing of the charter school and disposition of the school's assets, liabilities and outstanding obligations. *See generally* 24 P.S. § 17-1729-A(i).

provision, we conclude that it was the intent of the General Assembly that the directive in section 8327(b)(2) is only operative **if** the charter school remains open and operational at the time the DOE withholds the money from the chartering school district.

The result is the same without engaging in a statutory interpretation based upon in pari materia principles. Section 8327(b)(2) generally provides that a charter school's unpaid PSERS obligations are to be deducted from the chartering school district's funding. The relevant portion of section 1729-A(i), on the other hand, addresses the more narrow question of who is responsible for the unpaid obligations of a closed charter school. It specifically instructs that "[i]n no event" can a school district be financially responsible for a closed charter school's outstanding liabilities and obligations. 24 P.S. § 17-1729-A(i). As noted above, section 1729-A(i) was enacted three years after section 8327(b)(2). *See* supra, note 7. The legislature was therefore aware of the dictates of section 8327(b)(2) and deliberately included the pertinent language in section 1729-A(i) absolving the chartering school district from responsibility for a closed charter school's outstanding financial obligations, which would include a charter school's outstanding payments owed to PSERS. A conflict between the provisions arises when a charter school has closed prior to the DOE withholding funding from the school district. Therefore, section 1729-A(i), the more specific statutory section, operates as an exception to the general rule set forth in section 8327(b)(2). *See* 1 Pa.C.S.A. § 1933. Because delinquent PSERS contributions are an outstanding obligation and liability of a charter school, a school district cannot be financially

responsible for the unpaid PSERS payments after the charter is revoked or terminated.[12]

The legislature's choice of language in section 8327(b)(2) is also significant. It requires the withholding of funds from "the chartering school district" of amounts that are unpaid as of "the date such appropriations would otherwise be paid to the chartering

---

[12] Our holding does not, as the DOE claims, "invalidate [s]ection 8531 of the Retirement Code." *See* DOE's Brief at 24. Section 8531 states:

> Statutory interest charges payable, the maintenance of reserves in the fund, and the payment of all annuities and other benefits granted by the board under the provisions of this part are hereby made obligations of the Commonwealth. All income, interest, and dividends derived from deposits and investments authorized by this part shall be used for the payment of the said obligations of the Commonwealth.

24 Pa.C.S.A. § 8531. This statute speaks solely to the Commonwealth's role as the guarantor of payments due to annuitants and beneficiaries for deficiencies in the PSERS fund. Once payments are owed from PSERS to an annuitant or beneficiary, the obligation to pay is PSERS' obligation, not that of any particular school district. *See, cf.,* United Brokers Mort. Co. v. Fid. Phila. Trust Co., 363 A.2d 817, 820 n.3 (Pa. Commw. 1976); Blake v. Kline, 612 F.2d 718, 725 (3d Cir. 1979).

Further, we will not address the bald assertion by the DOE and the PSERS Board that our holding here results in the Charter School's employees losing credited service for the 2013-2014 school year. DOE's Brief at 24; PSERS Board's Brief at 21. To determine whether the teachers will in fact lose a year of credited service because of the Charter School's failure to remit the required PSERS payments involves the synthetization and interpretation of several statutory provisions (not briefed or argued); denial of benefits by PSERS; and, in that eventuality, factual determinations (not of record) regarding the teachers' remittance of their member contributions; consideration of whether teachers can be held responsible for the Charter School's default when the law, as written, does not permit teachers to make payments directly to PSERS; and countless other issues potentially implicated by the Charter School's financial defalcations -- none of which are before our Court. *See, e.g.,* 24 P.S. § 17-1724-A(c); 24 Pa.C.S.A. §§ 8102, 8302, 8303, 8306(a), 8321(a), 8322.1, 8323, 8326, 8327(a), 8506(c), 8507(d), 8522. We agree with Justice Wecht that there are a myriad of problems and gaps in the Charter School Law. *See generally* Concurring Op. (Wecht, J.). Speculating on the outcome of issues not joined, however, does not correct the problem.

school district or charter school." Id. A charter school without a charter, however, is dissolved and ceases to exist. No money "would otherwise be paid" to a charter school that no longer exists and a closed charter school likewise has no "chartering school district" at the time the DOE would withhold funds from that school district.[13]

Furthermore, the opening sentence of section 8327(b)(2) establishes the payment system as a means to "facilitate" payments from a charter school to PSERS, but does not, as the PSERS Board contends, **guarantee** the amounts due. By using the word "facilitate" instead of "guarantee," the General Assembly clearly contemplated circumstances in which the DOE would not be able to withhold funding from the school district that originally approved the charter to obtain delinquent PSERS payments owed by a charter school. It codified one such circumstance in section 1729-A(i), effectively prohibiting the withholding of funding from the school district to cover a now-closed charter school's outstanding liability to PSERS.

For the foregoing reasons, we hold that following the dissolution of a charter school, the school district that originally approved the charter is not financially responsible for the charter school's prior failure to remit the mandatory payments to its employees' retirement fund. Here, the DOE withheld money from the School District's basic education subsidy on August 28, 2014, two months after the Charter School lost its charter. This is prohibited by section 17-1729-A(i) of the Charter School Law. As the

---

[13] The operative date of section 8327(b)(2) is the date the appropriations would be paid to the school district, not the date of the missed PSERS payments. The Commonwealth Court's contrary holding was not accompanied by any analysis of the language of section 8327(b)(2) (or any other statutory provision), and is not supportable under the law. *See* Pocono Mountain Sch. Dist., 2015 WL 5457139, at *3

School District was not the chartering school district on the date the DOE withheld the School District's funding, section 8327(b)(2) was inapplicable.[14]

The order of the Commonwealth Court is reversed.

Justices Todd and Wecht join the Opinion Announcing the Judgment of the Court.

Chief Justice Saylor and Justice Wecht file concurring opinions.

Justice Baer files a dissenting opinion in which Justice Dougherty joins.

Justice Dougherty files a dissenting opinion.

---

[14] Based upon our conclusion that section 1729-A(i) prohibits the DOE's actions in this case, we need not address the argument advanced by the School District and its amicus that section 8327(b)(2) only permits the DOE to withhold funds from the chartering school district if it can recover the full amount from the charter school.