# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Catasauqua Area School District, :
                   Petitioner :
                               :
      v. : No. 89 C.D. 2018
                               : ARGUED: December 11, 2018
Pennsylvania Department of :
Education, :
                   Respondent :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                  FILED: January 18, 2019

Catasauqua Area School District (School District) petitions for review of the December 20, 2017 Order of the Secretary of Education (Secretary) of the Pennsylvania Department of Education (Department), which dismissed School District's Petition to Reverse Deductions from its Basic Education Funding Subsidy for Fiscal Year 2016-2017 (Petition to Reverse Deductions). The deductions at issue occurred on August 25, 2016 and December 29, 2016, in the amounts of $73,354.39 and $67,054.25, respectively.[1] For the reasons that follow, we reverse the Secretary's Order and remand this matter to the Department for further proceedings.

---

[1] The deductions were made by the Department's Division of Subsidy Data and Administration. For clarity, we refer to both the Department and the Division of Subsidy Data and Administration as "Department" herein.

**Background**

School District is a third-class school district in Lehigh County, Pennsylvania. Sec'y's Finding of Fact (F.F.) No. 1.[2] The Pennsylvania Public School Employees' Retirement Board (Retirement Board) is an independent administrative board of the Commonwealth of Pennsylvania, which transacts business under the Public School Employees' Retirement System (PSERS). *Id.* No. 3.

Medical Academy Charter School (Charter School) previously operated a public charter school pursuant to a charter granted by School District in February 2012 and renewed in April 2015. *Id.* No. 4. In June 2016, at the conclusion of the 2015-2016 school year, Charter School closed and ceased operations. *Id.* No. 5. For the 2016-2017 school year, School District received basic education funding payments from the Commonwealth pursuant to the state budget. *Id.* No. 6.

By email dated July 22, 2016, PSERS notified Charter School that it owed $73,354.39 to PSERS for outstanding employer and member contributions attributed in June 2016 and before. *Id.* No. 7. PSERS did not send a copy of the July 22, 2016 email to School District. *Id.* No. 8. By email dated August 3, 2016, PSERS sent the Department a list of employers that were delinquent in PSERS contributions, including the $73,354.39 owed by Charter School. *Id.* No. 9. PSERS did not send a copy of the August 3, 2016 email to School District. *Id.* No. 10.

On August 16, 2016, the Department sent an email to School District stating that School District's Financial Accounting Information Statement (Financial Statement) was available for review. *Id.* No. 11. The Financial Statement is a secure, web-based application that allows school districts to see state and federal payments made by the Department and deductions from those payments. *Id.* No. 12.

---

[2] The parties submitted a Joint Stipulation of Facts and Exhibits to the Secretary, which he adopted and incorporated in his Opinion.

The August Financial Statement showed two deductions from School District's basic education funding payment, one of which was a $73,354.39 deduction for "PSERS [Charter School] Delinquency." *Id.* No. 13. Because Charter School was certified as being delinquent by PSERS in its retirement contributions, the Department deducted $73,354.39 from School District's basic education funding payment on August 25, 2016. *Id.* No. 14. School District first reviewed its August Financial Statement on August 25, 2016. *Id.* No. 15.

On September 15, 2016, the $73,354.39 deducted from School District's August 25, 2016 basic education funding payment was transferred to the Public School Employees' Retirement Fund (Retirement Fund) and credited to Charter School's employer and member accounts. *Id.* No. 16.

By email dated November 18, 2016, PSERS notified Charter School that it owed $72,827.19 to PSERS for outstanding employer and member contributions attributed in June 2016 and before. *Id.* No. 17. PSERS later updated its records to reflect that Charter School owed only $67,054.25 in employer and member contributions. *Id.* No. 18. PSERS did not send a copy of the November 18, 2016 email to School District. *Id.* No. 19.

By email dated December 5, 2016, PSERS sent the Department a list of employers that were delinquent in PSERS contributions, including the $67,054.25 owed by Charter School. *Id.* No. 20. PSERS specifically requested a basic education funding deduction from the December 29, 2016 basic education subsidy for the outstanding contributions. *Id.* PSERS did not send a copy of the December 5, 2016 email to School District. *Id.* No. 21.

On December 15, 2016, the Department sent an email to School District stating that its Financial Statement was available for review. *Id.* No. 22. The

3

December Financial Statement showed three deductions from School District's basic education funding payment, one of which was a $67,054.25 deduction for "PSERS Delinquency [Charter School]." *Id.* No. 23. Because Charter School was certified as being delinquent by PSERS in the payment of its retirement contributions, the Department deducted $67,054.25 from School District's basic education funding payment on December 29, 2016. *Id.* No. 24.

School District first reviewed its December Financial Statement on January 3, 2017. *Id.* No. 25. On January 20, 2017, the $67,054.25 deducted from School District's December 29, 2016 basic education funding payment was transferred to the Retirement Fund and credited to Charter School's employer and member accounts. *Id.* No. 26.

On January 9, 2017, School District filed its Petition to Reverse Deductions with the Secretary, seeking reversal of the Department's August 25, 2016 and December 29, 2016 deductions from School District's basic education funding subsidy. In its Petition to Reverse Deductions, School District argued that under the Pennsylvania Supreme Court's recent decision in *Pocono Mountain School District v. Pennsylvania Department of Education*, 151 A.3d 129 (Pa. 2016),[3] the Department's deductions from School District's basic education funding subsidy were improper. In *Pocono Mountain*, the Supreme Court concluded that Section 1729-A(i) of the Charter School Law[4] prohibits the Department from withholding

---

[3] The Supreme Court issued *Pocono Mountain* on December 28, 2016, approximately two weeks before School District filed its Petition.

[4] Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of June 19, 1997, P.L. 225, 24 P.S. § 17-1729-A(i). Section 1729-A(i) of the Charter School Law provides:

funds from a school district for a charter school's PSERS delinquencies after the charter school is closed. The *Pocono Mountain* Court held that the school district was not financially responsible, after the charter's revocation, for the charter school's prior failure to make payments to its employees' retirement fund.[5]

In response to the Petition to Reverse Deductions, the Retirement Board[6] requested that the Secretary dismiss the appeal because the Secretary lacks jurisdiction over PSERS. The Retirement Board argued that the relief requested would require the Secretary to issue an order to PSERS, which is beyond the Secretary's scope of authority. The Retirement Board also argued that *Pocono Mountain* should not be applied retroactively to the deductions at issue because School District had not previously challenged the propriety of the deductions.

---

> When a charter is revoked, not renewed, forfeited, surrendered or otherwise ceases to operate, the charter school shall be dissolved. After the disposition of any liabilities and obligations of the charter school, any remaining assets of the charter school, both real and personal, shall be distributed on a proportional basis to the school entities with students enrolled in the charter school for the last full or partial school year of the charter school. *In no event shall such school entities or the Commonwealth be liable for any outstanding liabilities or obligations of the charter school.*

24 P.S. § 17-1729-A(i) (emphasis added).

[5] The Opinion Announcing the Judgment of the Court was authored by Justice Donohue and joined by Justices Todd and Wecht. Chief Justice Saylor and Justice Wecht filed Concurring Opinions. Justices Baer and Dougherty filed Dissenting Opinions.

[6] On March 9, 2017, the Secretary granted the Retirement Board's Petition to Intervene in the matter. The Retirement Board did not petition to intervene before this Court and is not a party to this appeal.

By Opinion and Order dated December 20, 2017, the Secretary dismissed School District's Petition to Reverse Deductions.[7] The Secretary concluded that he lacked jurisdiction over the Petition to Reverse Deductions because: (1) Section 8327(b)(2) of the Public School Employees' Retirement Code (Retirement Code), 24 Pa. C.S. § 8327(b)(2),[8] does not authorize the Department to reverse a deduction previously made from a school district's basic education subsidy; (2) the matter involves interpretation and application of the Retirement Code, a statute not administered by the Department; and (3) the matter involves PSERS, an agency not within the Department's jurisdiction. The Secretary explained:

---

[7] As a threshold matter, the Secretary concluded that School District's Petition to Reverse Deductions was timely filed, as PSERS had challenged its timeliness before the Secretary. The timeliness of the Petition to Reverse Deductions is not at issue on appeal.

[8] Section 8327(b)(2) of the Retirement Code states:

To facilitate the payments of amounts due from any charter school, as defined in Article XVII-A of the act of March 10, 1949 (P.L. 30, No. 14), known as the Public School Code of 1949, to the fund and the trust through the State Treasurer and to permit the exchange of credits between the State Treasurer and any employer, *the Secretary of Education and the State Treasurer shall cause to be deducted and paid into the fund and the trust from any funds appropriated to the Department . . . for basic education of the chartering school district of a charter school and public school employees' retirement contributions amounts equal to the employer contributions, employer defined contributions and pickup contributions which a charter school is required to pay to the fund and the trust, as certified by the [Retirement B]oard, and as remains unpaid on the date such appropriations would otherwise be paid to the chartering school district or charter school.* Such amounts shall be credited to the appropriate accounts in the fund and the trust. Any reduction in payments to a chartering school district made pursuant to this section shall be deducted from the amount due to the charter school district pursuant to the Public School Code of 1949.

24 Pa. C.S. § 8327(b)(2) (emphasis added).

6

[R]egardless of the Department's legal basis for the transfer of the [d]eductions to PSERS and the [Retirement] Fund, it is evident that the [d]eductions now remain in the [Retirement] Fund. It is plain under the Retirement Code that the exclusive responsibility to control and manage the [Retirement] Fund lies with PSERS, not the Department. 24 Pa. C.S. § 8521 (stating that "the [PSERS] trustees shall have exclusive control and management of the [Retirement F]und" and that "[a]ll payments from the [Retirement F]und shall be made by the State Treasurer in accordance with requisitions signed by the secretary of the [Retirement B]oard, or his designee, and ratified by resolution of the [Retirement B]oard.") Unlike Section 8327(b)(2) [of the Retirement Code], which gives the Secretary an express role (along with the State Treasurer) in the process of making deductions from subsidy payments, the Secretary appears to have no role under the Retirement Code in the payment or transfer of funds from the [Retirement] Fund.

Sec'y's Op., 12/20/17, at 15-16.

Because the Secretary determined that he lacked jurisdiction, he declined to consider the parties' arguments regarding whether the holding in *Pocono Mountain* applies to the deductions at issue, stating:

[W]hile I am sympathetic to [School District's] situation of apparently having "lost" an amount of basic education funding with the hindsight of *Pocono Mountain*, I also appreciate the situation faced by the [Department] and PSERS having been caught by a change in the interpretation of a provision of the Retirement Code. As noted previously, the Supreme Court in *Pocono Mountain* did not address what remedy the school district was entitled to in that case. Clearly many of the Justices were concerned about the potential impact of the decision on PSERS and the employees involved but did not resolve those thorny issues. However, an administrative proceeding before the Secretary is not well suited to resolve the issues presented by the Petition. Regardless of the equities of the Petition, I am not permitted to expand my jurisdiction beyond the bounds of administrative law. It is also beyond my power to order PSERS or the State Treasurer in any sense to reverse the [d]eductions.

7

*Id.* at 19. Therefore, the Secretary dismissed School's District's Petition to Reverse Deductions. School District now appeals to this Court.[9]

## Issues

(1) Were the Department's deductions from School District's basic education funding subsidy improper under *Pocono Mountain*?

(2) Did the Secretary have jurisdiction to reverse the improper deductions from School District's basic education funding subsidy?

(3) With regard to the December 29, 2016 deduction, should *Pocono Mountain* be applied prospectively?

(4) With regard to the August 25, 2016 deduction, should *Pocono Mountain* be applied retroactively?

## Analysis

On appeal, School District asserts that the Department's deductions from School District's basic education subsidy on August 25, 2016 and December 29, 2016 were improper under *Pocono Mountain* because the deductions were made after Charter School had ceased operations. School District contends that *Pocono Mountain* should be applied prospectively to the December 29, 2016 deduction and retroactively to the August 25, 2016 deduction.

In response, the Department asserts that School District cannot avail itself of *Pocono Mountain*'s holding because it failed to challenge the propriety of the deductions, despite having prior notice of Charter School's delinquencies, before that case was decided. The Department further contends that prior to *Pocono Mountain*, the long-standing rule was that upon PSERS' certification that a charter school was delinquent in its retirement contributions, the Department would deduct

_____

[9] Because the issues on appeal involve purely legal questions, our standard of review is *de novo* and our scope of review is plenary. *Pocono Mountain*, 151 A.3d at 134.

8

the amount of the delinquency from the next basic education funding payment made to the school district. Thus, the Department asserts that the deductions were proper under the law in effect at the time they were made.

Before we reach the merits of the parties' arguments, we will first examine the *Pocono Mountain* decision, as it is directly on point and central to the issues on appeal.

### 1. *Pocono Mountain*

In *Pocono Mountain*, a charter school in the Pocono Mountain School District failed to pay its employees' retirement contributions to PSERS. 151 A.3d at 133. After the charter school closed at the end of the 2013-14 school year, the Department deducted $87,700.32 from the school district's basic education subsidy due to the charter school's failure to make mandatory payments to PSERS. *Id.*

The school district appealed the deduction to the Secretary. The Department filed a motion to dismiss the school district's administrative appeal, arguing that Section 8327(b)(2) of the Retirement Code required the Department to deduct the money from the school district's basic education subsidy and constituted a ministerial act that was not subject to administrative review. *Id.* at 133. The school district opposed the motion to dismiss, arguing that the Department's deduction constituted an adjudication subject to administrative review. *Id.* The Secretary granted the motion to dismiss, finding that the deduction constituted a ministerial act and was not the proper subject of an administrative hearing. *Id.*

The school district filed a petition for review with this Court, which upheld the Secretary's decision in an unreported memorandum opinion. *Id.* We determined that Section 8327(b)(2) of the Retirement Code required the Department to deduct the deficiency from the school district's basic education subsidy. *Id.* at 134.

9

Therefore, we concluded that "[a]lthough the deduction was taken after the [c]harter [s]chool's charter was revoked, the [s]chool [d]istrict was the chartering school district during the period in which the deficiency arose and, thus, it is on the hook for the amount of the deficiency." *Pocono Mountain Sch. Dist. v. Pa. Dep't of Educ.* (Pa. Cmwlth., No. 2052 C.D. 2014, filed July 8, 2015), 2015 WL 5457139, at *7-8.

The school district appealed, and the Supreme Court reversed this Court's decision. *Pocono Mountain*, 151 A.3d at 141. The Supreme Court extensively examined the interplay between Section 8327(b)(2) of the Retirement Code and Section 1729-A(i) of the Charter School Law, focusing on the language in, and the purposes of, both statutes. *Id.* at 137-38. After analyzing both statutes, the Supreme Court determined:

> Section 8327(b)(2) [of the Retirement Code] facilitates the payment of a charter school's outstanding obligations to PSERS by withholding those amounts from the funding due to the chartering school district. Section 1729-A(i) [of the Charter School Law] precludes, under any circumstance, making a school district responsible for a closed charter school's outstanding obligations. Reading these two statutes as one, and giving effect to every provision, we conclude that *it was the intent of the General Assembly that the directive in [S]ection 8327(b)(2) is only operative if the charter school remains open and operational at the time the [Department] withholds the money from the chartering school district.*

*Id.* at 139 (emphasis added).

The Supreme Court further concluded that unpaid retirement contributions constituted an outstanding financial obligation of a closed charter school under Section 1729-A(i) of the Charter School Law. *Id.* at 130. The Court explained its reasoning as follows:

> [T]he opening sentence of [S]ection 8327(b)(2) [of the Retirement Code] establishes the payment system as a means to "facilitate"

10

payments from a charter school to PSERS, but does not, as the [Retirement] Board contends, **guarantee** the amounts due. By using the word "facilitate" instead of "guarantee," the General Assembly clearly contemplated circumstances in which the [Department] would not be able to withhold funding from the school district that originally approved the charter to obtain delinquent PSERS payments owed by a charter school. It codified one such circumstance in [S]ection 1729-A(i) [of the Charter School Law], effectively prohibiting the withholding of funding from the school district to cover a now-closed charter school's outstanding liability to PSERS.

> . . . [W]e hold that following the dissolution of a charter school, the school district that originally approved the charter is not financially responsible for the charter school's prior failure to remit the mandatory payments to its employees' retirement fund. Here, the [Department] withheld money from the [s]chool [d]istrict's basic education subsidy on August 28, 2014, two months after the [c]harter [s]chool lost its charter. This is prohibited by [S]ection [1729-A(i)] of the Charter School Law. As the [s]chool [d]istrict was not the chartering school district on the date the [Department] withheld the [s]chool [d]istrict's funding, [S]ection 8327(b)(2) [of the Retirement Code] was inapplicable.

*Id.* at 141 (second emphasis added). Accordingly, the Supreme Court held that Section 1729-A(i) of the Charter School Law prohibits the Department from withholding funds from a school district for a charter school's PSERS delinquencies after the charter school is closed. *Id.*

## 2. *Pocono Mountain***'s Applicability to this Case**

Next, we must determine whether the holding in *Pocono Mountain* applies to this case. If it does, then the deductions at issue would be improper, because both deductions were made after Charter School had ceased operations.

The Supreme Court decided *Pocono Mountain* on December 28, 2016. Although School District filed its Petition to Reverse Deductions after *Pocono Mountain* was decided, we must look to the dates of the deductions to determine

11

whether *Pocono Mountain*'s holding applies. The first deduction, on August 25, 2016, pre-dated *Pocono Mountain*; the second deduction, on December 29, 2016, post-dated the decision by one day. Therefore, based solely on the date of the December 29, 2016 deduction, we conclude that *Pocono Mountain*'s holding applies prospectively to that deduction.

The only question that remains is whether *Pocono Mountain* applies retroactively to the August 25, 2016 deduction. The *Pocono Mountain* Court did not address whether its holding should apply retroactively or only prospectively.

Generally, Pennsylvania appellate courts apply the law in effect at the time of appellate review. *Passarello v. Grumbine*, 87 A.3d 285, 307 (Pa. 2014). However, the Supreme Court has cautioned against applying this rule "rotely." *Id.* Rather, the determination of whether a judicial decision announcing a new rule of law should be applied retroactively or prospectively "is a matter of judicial discretion to be decided on a case-by-case basis." *Id.*; *see Dana Holding Corp. v. Workers' Comp. Appeal Bd. (Smuck)*, 195 A.3d 635, 641 (Pa. Cmwlth. 2018).[10]

---

[10] Our Supreme Court has identified four approaches to deciding what effect to give a decision announcing a new rule of law:

> One approach is to give the new rule purely prospective effect so that it is not even applied to the parties in the case in which the new rule is announced. . . . Another approach is to limit retroactive application to the case in which it is announced. A third choice is to apply the new rule to the case in which it is announced and to all cases pending at the time the new rule is announced. A fourth approach is to give the new rule fully retroactive effect. Under this fourth choice, the new rule is applied to the case in which it is announced, to all cases pending at the time the new rule is announced, and to cases which are final at the time the new rule is announced.

*Blackwell v. State Ethics Comm'n*, 589 A.2d 1094, 1098-99 (Pa. 1991) (internal citations omitted).

12

Before considering the breadth of *Pocono Mountain*'s application, we must first determine, as a threshold matter, if the decision announced a new rule of law. *Office of Disciplinary Counsel v. Surrick*, 749 A.2d 441, 444 (Pa. 2000).

Our Court has set forth the following analysis for determining whether a judicial decision announces a new rule of law:

> The Supreme Court announces a new rule of law when it "issues a ruling that overrules prior law, expresses a fundamental break from precedent, upon which litigants may have relied, or decides an issue of first impression not clearly foreshadowed by precedent." . . . *In cases where the Supreme Court is construing a statute, a new rule of law is not created where the decision "adopts a view of the statute which was not wholly without precedent" or it involves the Court's first opportunity to construe the provision at issue. . . .* In cases where the Supreme Court is issuing its first ruling interpreting the specific statute, *the Court's "first pronouncement on the substance of a statutory provision is purely a clarification of existing law" and the construction of the statute by the Court becomes a part of that statute from its enactment.* Furthermore, the fact that the Supreme Court decision overrules established intermediate appellate court precedent is irrelevant; as the Supreme Court has explained, *if the decision in question "did not overrule, modify, or limit any previous case **from [the Supreme] Court** on the question," then the decision did not announce a new rule of law*.

*Anderson v. Talaber*, 171 A.3d 355, 361-62 (Pa. Cmwlth. 2017) (emphasis added) (bold in original) (internal citations omitted). Furthermore, with regard to cases involving statutory interpretation, our Supreme Court has stated:

> Our role is to interpret statutes as enacted by the [General] Assembly. We affect legislation when we affirm, alter, or overrule our prior decisions concerning a statute or when we declare it null and void, as unconstitutional. Therefore, *when we have not yet answered a specific question about the meaning of a statute, our initial interpretation does not announce a new rule of law. Our first pronouncement on the*

13

> *substance of a statutory provision is purely a clarification of an existing law.*

*Fiore v. White*, 757 A.2d 842, 848 (Pa. 2000) (emphasis added); *see also Surrick*, 749 A.2d at 444 ("A new rule of law is established where an abrupt and fundamental shift from prior precedent, upon which litigants may have relied, has occurred.").

Applying these principles, we conclude that *Pocono Mountain* did not announce a new rule of law for the following reasons. First, the Supreme Court interpreted the meaning of a statutory provision, determining that unpaid PSERS contributions constitute an "outstanding obligation" of a closed charter school under Section 1729-A(i) of the Charter School Law. Second, the Supreme Court's ruling was the first pronouncement on the applicability of Section 1729-A(i) of the Charter School Law to the PSERS delinquencies of a closed charter school, holding that Section 1729-A(i) prohibits the Department from withholding funds from a chartering school district to cover such delinquencies. Finally, *Pocono Mountain* did not overrule prior Supreme Court precedent, nor was its holding a shift from prior precedent upon which the parties relied. As School District correctly points out in its brief, the only prior appellate decision addressing the issue presented in *Pocono Mountain* was this Court's unreported memorandum decision, which the Supreme Court overturned.

Because *Pocono Mountain* merely clarified the legislative meaning of Section 1729-A(i) of the Charter School Law, the Supreme Court's "construction of [Section 1729-A(i)] bec[ame] a part of that statute from its enactment."[11] *Anderson*, 171 A.3d at 362; *see Kendrick v. Dist. Attorney*, 916 A.2d 529, 538 (Pa. 2007) (holding that the Supreme Court's prior decision, interpreting the term "enterprise" in

---

[11] Section 1729-A(i) was added to the Charter School Law in 1997. The specific language interpreted by the *Pocono Mountain* Court was added to Section 1729-A(i) by amendment in 2004.

14

Pennsylvania's corrupt organizations statute, did not establish a new rule of law, where the decision did not overrule, modify, or limit any prior Supreme Court cases, but merely explained the meaning and scope of a statutory term); *Surrick*, 749 A.2d at 445 (concluding that a prior Supreme Court decision interpreting a rule of professional conduct "did not create a new legal standard; it merely provided explicit clarification of existing law," where no prior precedent had interpreted the rule in that manner, and it was not unforeseeable that the Supreme Court would so interpret the rule).[12]

As construed by our Supreme Court in *Pocono Mountain*, Section 1729-A(i) of the Charter School Law prohibits the Department from withholding funds from a chartering school district's basic education subsidy for a closed charter school's PSERS delinquencies. It is undisputed that the deductions at issue here were made after Charter School had ceased operations. Therefore, we conclude that the deductions were improper.

With regard to jurisdiction, the *Pocono Mountain* Court did not address whether the Secretary had the authority to order PSERS or the Retirement Board to return the improperly transferred funds to the chartering school district. Nonetheless, because we conclude that the Department improperly deducted the funds from School District's basic education subsidy, the Department must make School District whole by reversing the deductions.[13]

---

[12] *But cf. Oz Gas, Ltd. v. Warren Area Sch. Dist.*, 938 A.2d 274 (Pa. 2007) (holding that Supreme Court's prior decision interpreting a state tax statute announced a new principle of law and applied prospectively only, where the prior decision invalidated the tax provision and the equities weighed in favor of prospective-only application).

[13] "[A]dministrative agencies are creatures of the legislature and can only exercise those powers which have been specifically conferred upon them, by the legislature, in clear and unmistakable language." *Prop. Owners, Residents, and/or Taxpayers of Pleasant Valley Sch. Dist.*

## Conclusion

Accordingly, because we conclude that the Department's August 25, 2016 and December 29, 2016 deductions from School District's basic education subsidy were improper, we reverse the Secretary's Order, remand this matter to the Department, and direct the Department to reverse the withholding of $140,408.64 from School District's basic education funding subsidy.

_____
ELLEN CEISLER, Judge

---

*v. Pleasant Valley Sch. Dist.*, 515 A.2d 85, 88 (Pa. Cmwlth. 1986). This general rule, "however, 'is tempered by the recognition that an administrative agency is vested with the implied authority necessary to the effectuation of its express mandates,' because the Legislature 'cannot foresee all the problems incidental to' the agency's carrying out its duties and responsibilities." *Sewer Auth. v. Pa. Infrastructure Inv. Auth.*, 81 A.3d 1031, 1039 (Pa. Cmwlth. 2013) (citation omitted).

Section 8327(b)(2) of the Retirement Code gives the Department the express authority "to facilitate" payments from a school district's basic education subsidy to PSERS when a charter school is delinquent in making payments to PSERS. However, as *Pocono Mountain* makes clear, facilitating those payments is not a mere ministerial act, but requires some exercise of the Department's discretion, namely, to determine if a charter school is still in existence. In other words, as the Supreme Court recognized, Section 8327(b)(2) is meant to "facilitate" payments, not to "**guarantee** the amounts due. By using the word 'facilitate' instead of 'guarantee,' the General Assembly clearly contemplated circumstances in which the [Department] would not be able to withhold funding from the school district." *Pocono Mountain*, 151 A.3d at 141. Because Section 8327(b)(2) gives the Department the express authority to facilitate payments and that facilitation involves some discretion on the Department's part, then the Department must also have the *implicit* power to determine that a deduction it approved was improper. Therefore, we conclude that the Department has jurisdiction to determine that it erred in facilitating a payment.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Catasauqua Area School District,    :
        Petitioner    :
                              :
      v.                      :  No. 89 C.D. 2018
                              :
Pennsylvania Department of    :
Education,                   :
        Respondent    :

## O R D E R

AND NOW, this 18th day of January, 2019, the December 20, 2017 Order of the Secretary of Education of the Pennsylvania Department of Education (Department) is hereby REVERSED, and this matter is REMANDED to the Department for further proceedings consistent with the foregoing Opinion.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge